UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

DEXTER EARL HOLLINS,

                Plaintiff,                      Case No. 1:13-cv-8

v.                                         Honorable Janet T. Neff

CINDI CURTIN et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff will pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Barber, Beckwith, Bradley, Heyns, Howes, Jacobsen, and Little. The Court will allow service of the complaint against Defendants Ball, Curtin, McCarey, Sanders, Schiebner, and Thomas.

**Factual Allegations**

Plaintiff Dexter Earl Hollins presently is incarcerated by the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF). The events about which he complains occurred while he was incarcerated at ECF and the Lakeland Correctional Facility (LCF). He sues MDOC Director Daniel Heyns, Ombudsman Keith Barber, as well as the following employees of LCF: Warden Carol Howes; Assistant Deputy Warden (ADW) Linda Beckwith; Assistant Resident Unit Supervisor (ARUS) J. Bradley; and Hearings Officer (unknown) Jacobsen. Plaintiff also sues the following employees of ECF: Warden Cindi Curtin; Deputy Warden Timothy Ball; Resident Unit Managers (RUMs) Robert Sanders and Jason Thomas; ARUS Robert McCarey; Inspector (unknown) Schiebner; and Librarian C. Little.

In his *pro se* complaint, Plaintiff asserts claims with respect to three issues: (1) his confinement in administrative segregation; (2) the confiscation of certain funds from his prison account; and (3) an appeal in a federal habeas corpus proceeding that was not timely filed on his behalf by the prison legal writer program at ECF.

*(1) Segregation*

On August 19, 2011, while Plaintiff was located at LCF, he was in the prison yard when another prisoner assaulted Plaintiff's friend, inmate Blythewood. Plaintiff left the scene soon after the assault began, and Blythewood later died of his injuries. No prison guards witnessed the incident, and it was not captured on the prison's security cameras; however, prison officials discovered that Plaintiff was with Blythewood before the assault, and that Plaintiff left the area shortly afterward. A prison official prepared a misconduct report charging Plaintiff with attempted

murder and accusing Plaintiff of luring Blythewood into the prison yard so that he could be assaulted.

On August 26, 2011, Warden Howes allegedly "pulled" the misconduct report because there was "no evidence" to support a guilty finding. (Compl., docket #1, Page ID#6.) She replaced it with a notice of intent (NOI) prepared by ADW Beckwith to classify Plaintiff to administrative segregation, based on the asserted reason that the Michigan State Police (MSP) were investigating possible "felonious behavior" by Plaintiff. (*Id.*) Plaintiff received a hearing regarding the NOI on August 29, 2011. He contends that the hearing was unfair because he was not allowed to present witness statements, and the hearings officer, Defendant Jacobsen, refused to review prison video evidence related to the assault. Jacobsen told Plaintiff that the sole purpose for the hearing was to confirm that the MSP was investigating him for his involvement in the assault on Blythewood. According to the hearing report, Jacobsen concluded that segregation was warranted because a letter from the state police indicated that Plaintiff "is involved with an investigation by the police for a felony complaint." (Ex. 1 to Compl., docket #1-2, Page ID#28.)

On September 1, 2011, Plaintiff was transferred to ECF and placed in administrative segregation. Plaintiff filed a grievance on September 19, 2011, complaining about the hearing conducted by Jacobsen. Warden Curtin denied the grievance at step II of the grievance appeal process. Director Heyns subsequently upheld Curtin's response.

On September 22, 2011, Sergeant Jim Karbon of the MSP and Deputy Warden Ball interviewed Plaintiff about the incident involving Blythewood. Plaintiff explained that he was not involved in the assault and that he left the prison yard when Blythewood was attacked. Sgt. Karbon told Ball that he believed Plaintiff's story, and that he considered Plaintiff to be a witness to the

assault rather than a suspect. Karbon indicated that he knew who committed the assault, and named another inmate. Karbon asked Plaintiff to sign a statement saying that he saw that inmate commit the assault. Karbon told Plaintiff that if he did not sign the statement, he would face murder charges. Plaintiff asked for an attorney, but Karbon told him that an attorney was not necessary because Plaintiff was not a suspect. Plaintiff refused to sign the statement, so Ball sent Plaintiff back to segregation, telling him to notify Ball when Plaintiff was ready to make a statement.

Plaintiff then filed a grievance complaining that he was being held in segregation without cause. Sometime thereafter, prison officials at ECF reissued the misconduct report for the assault. On October 14, 2011, a MDOC hearings officer found Plaintiff not guilty of the assault, noting Sgt. Karbon's statement on a police report that Plaintiff was a witness rather than a suspect in the assault investigation. Plaintiff continued to be confined in segregation, however.

The security classification committee at ECF met with Plaintiff on a monthly basis to review his confinement in administrative segregation. (*See* Compl., docket #1, Page ID#10.) Attached to the complaint are copies of "Segregation Behavior Review" forms dated October 25, 2011, February 14, May 8, July 31, and October 23, 2012. (Ex. 1 to Compl., docket #1-2, Page ID##43-47.) Each form sets forth the committee's recommendation regarding Plaintiff's continued confinement in segregation, and the reason for that recommendation. Plaintiff alleges that Deputy Warden Ball, RUM Sanders, RUM Thomas, and ARUS McCarey each participated in one or more of the security classification reviews as members of the committee. According to the forms, Warden Curtin approved the committee's recommendations.

At each review hearing, the committee told Plaintiff that he was still under investigation by the police. At one such hearing, Thomas allegedly told Plaintiff that he would be

in segregation "forever." (Compl., Page ID#8.) At another hearing, Plaintiff explained to the committee that Sgt. Karbon told Plaintiff and Ball that Plaintiff was not a suspect in the MSP investigation. In response, Ball denied being present at Plaintiff's interview with Karbon.

After one of Plaintiff's reviews, Deputy Warden Sharp, who is not named as a Defendant in this action, allegedly stated that Plaintiff was in segregation because of a misconduct conviction for possession of dangerous contraband.[1] Plaintiff, however, asserts that he received a separate punishment for that misconduct, *i.e.*, seven days in "toplock" and fourteen days of loss of privileges. (Compl., docket #1, Page ID#9.) Thus, according to Plaintiff, that misconduct was not the basis for his ongoing confinement in administrative segregation.

On December 6, 2011, Plaintiff filed a grievance complaining about Sharp's allegedly false statement. The grievance was denied. At step II of the grievance appeal process, Plaintiff informed Defendant Curtin what Sgt. Karbon told Deputy Warden Ball about Plaintiff not being a suspect in the police investigation. Ball allegedly lied to Curtin about Karbon's statement, and Curtin denied the grievance appeal. Defendants Heyns and Barber denied Plaintiff's further appeals on that grievance.

On December 1, 2011, Plaintiff received a memorandum from Defendant Ball stating that Plaintiff was still under investigation by the MSP, and that he would remain in segregation until the issue was resolved. (12/1/11 Ball Memo., docket #1-2, Page ID#41.) On January 13, 2012, Plaintiff received a memorandum from Inspector Schiebner stating that he had contacted Sgt. Karbon, who confirmed that an investigation was still pending. (1/13/12 Schiebner Memo., docket

---

[1] When Plaintiff was moved to segregation, prison officials found a match and a striker in his belongings.

- 5 -

#1-2, Page ID#42.) Schiebner informed Plaintiff that he would remain in segregation until the close of the police investigation.

Plaintiff contends that, per MDOC policy, Warden Curtin was supposed to personally interview Plaintiff after the first six months of segregation. She did not do so. Plaintiff filed a grievance about the issue, and she allegedly falsified a segregation review form, stating that she had personally interviewed Plaintiff in front of his cell on September 19, 2012. ARUS McCarey denied the grievance.

As of January 2013, when Plaintiff filed his complaint, he had been in segregation for sixteen months. He asserts that the committee's stated reason for keeping him in segregation (an an ongoing police investigation) is merely a pretext to hold him in segregation indefinitely.

Plaintiff contends that Defendants have violated his right to equal protection, his right to due process under the Fifth and/or Fourteenth Amendments, his right under the Eighth Amendment to avoid cruel and unusual punishment, and an asserted right under the Fifth Amendment not to be punished without a finding of guilt. He also claims that he is being "detained" in segregation "without probable cause," in violation of the Fourth Amendment. (Compl., docket #1, Page ID#4.) In addition, he claims that Defendants have violated his rights under the First Amendment, because he has been "deprived of the right to attend religious services." (*Id.* at Page ID#10.)

### (2)  Confiscation of funds

Plaintiff further alleges that prison officials "arbitrarily" placed an "illegal debt" of $525.00 on his prison account, and then withdrew funds to satisfy that debt. (*Id.* at Page ID#11.) After Plaintiff was placed in segregation due to the assault charge, prison officials allegedly

attempted to find a connection between Plaintiff and the individual who assaulted Blythewood. After searching Plaintiff's property, officials discovered account receipts bearing the name of Blythewood's brother. Plaintiff alleges that Blythewood's brother sent money to Plaintiff in several payments over the course of a year, from September 2010 to August 2011.

On August 26, 2011, Plaintiff received a NOI to remove $525.00 from his prison account because his receipt of funds from Blythewood's brother allegedly violated MDOC policy. MDOC Policy Directive 04.02.125 provides that funds from a family member of another prisoner may not be credited to a prisoner's account, unless the funds are received to purchase hobby-craft items or the sender is a family member of the recipient. Blythewood's brother is not a member of Plaintiff's family. Plaintiff contested the NOI at a hearing, claiming that he was not aware of the policy and that he should not be required to return funds that the MDOC had already credited to his account. Defendant Bradley upheld the NOI and determined that the funds should be removed. Plaintiff then filed a grievance appealing Bradley's decision. Defendants Beckwith, Howes, Heyns, and Barber each upheld Bradley's decision at different stages of the grievance process. Thus far, the MDOC has taken $351.04 from Plaintiff's prison account to return the money that he received from Blythewood's brother. Plaintiff claims that the removal of those funds violated his right to due process and equal protection.

### (3) Habeas corpus appeal

While Plaintiff was in segregation at ECF, he learned that the Court of Appeals for the Sixth Circuit denied his appeal in a federal habeas corpus action on August 30, 2011. He then requested assistance from the prison legal writer program to appeal the Sixth Circuit's decision because his access to the law library was restricted. Plaintiff's request was granted, but the

individuals working on his appeal incorrectly calculated the appeal deadline as November 30, 2011 (the correct deadline was November 28), and failed to file Plaintiff's appeal by November 30. As a result, the Supreme Court denied Plaintiff's petition as untimely.

Defendant Little was the prison librarian responsible for supervising the prison legal writer program at the time. Plaintiff asserts that she neglected to properly train and supervise the legal writers. Plaintiff filed a grievance about the issue, and Warden Curtin and Director Heyns denied the grievance at step II and III of the grievance process, respectively. Plaintiff also complained to Ombudsman Barber, but Barber failed to respond to Plaintiff's complaint. Plaintiff contends that Defendants deprived him of due process and his right of access to the courts.

As relief, Plaintiff requests an injunction requiring his release from segregation, relief from the debt imposed on him, and nominal, compensatory, and punitive damages.

## Discussion

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that

the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also*

*Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

and 1915(e)(2)(B)(i)).

   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v.*

*Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

(1994).

### A.  Supervisory Liability

   Plaintiff's only allegation against Defendants Barber, Heyns, and Howes are that they

denied Plaintiff's grievances or failed to respond to his complaints. Government officials may not

be held liable for the unconstitutional conduct of subordinates under a theory of respondeat superior

or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S.

658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional

- 9 -

violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). In addition, defendants are not liable merely because they denied an administrative grievance or failed to act based upon information contained in a grievance. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisory official's failure to supervise, control or train [another individual] is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff has not alleged that Defendants Barber, Heyns, or Howes participated in any unconstitutional conduct. Consequently, they will be dismissed for failure to state a claim. Similarly, to the extent Plaintiff sues ADW Beckwith because she denied Plaintiff's grievances, he does not state a claim against her.[2]

## B. Access to the courts

Plaintiff asserts that Defendant Little's failure to train or supervise prison legal writers resulted in the loss of an opportunity to file an appeal in his federal habeas corpus proceedings, thereby violating his right of access to the courts. As indicated, *supra*, Plaintiff cannot

---

[2]Beckwith was also involved in Plaintiff's placement in segregation, which is discussed in Section I.E, *infra*.

hold Little liable merely because she failed to adequately train or supervise the individuals who were working on his appeal. Plaintiff does not allege that she approved or otherwise participated in any conduct leading to his injury. Consequently, he does not state a viable § 1983 claim against her.

Moreover, even if she directly participated in the conduct leading to his injury, Plaintiff has not stated an access-to-the-courts claim. It is clearly established that prisoners have a constitutionally-protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim, however, a plaintiff must show "actual injury" to a nonfrivolous legal claim. *See Lewis*, 518 U.S. at 349, 351-53. Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, the plaintiff lost an opportunity to pursue a claim, that claim "[must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying

claim is more than hope." *Id.* at 416. Plaintiff's allegations fail to satisfy the foregoing pleading requirements. Plaintiff merely alleges that he was pursuing an appeal in a federal habeas corpus action; he does not describe any of the claims or arguments that he intended to raise in his appeal, as required by *Christopher*.

Furthermore, the court records in Plaintiff's habeas action strongly suggest that his appeal was, in fact, frivolous. On November 22, 2010, the court in which Plaintiff filed his habeas petition dismissed it as untimely. (*See Hollins v. Howes*, No. 2:10-cv-11131 (E.D. Mich.), docket ##16, 17.) The petition was filed in 2010, but the district court concluded that the applicable statute of limitations expired in 1993, many years before Plaintiff filed his petition. (*Id.*) Plaintiff sought leave from the Court of Appeals for the Sixth Circuit to appeal the district court's decision, but the Court of Appeals denied Plaintiff a certificate of appealability, holding that it was not even "debatable" whether the petition raised a valid claim or whether the district court was wrong in its procedural ruling. *Hollins v. Howes*, No. 10-2700 (6th Cir. Aug. 30, 2011).[3] Given that the Sixth Circuit summarily dismissed his appeal to that court, it is exceedingly unlikely that any further appeal to the Supreme Court was grounded on more than mere hope. Because Plaintiff fails to state a claim against Defendant Little, therefore, she will be dismissed.

## C. Eighth Amendment

Plaintiff contends that his confinement in segregation violates his rights under the Eighth Amendment. Plaintiff asserts that he cannot attend religious services, he has been isolated from other inmates, he cannot work, he does not have access to vocational, educational, recreational,

---

[3]The Sixth Circuit did note that the district court wrongly determined that the statute of limitations expired in 1993. Instead, limitations period expired in 1997, one year after the statute creating the time limit became law. But, the Sixth Circuit held that the district court was correct to dismiss the petition as untimely, because it was filed many years after the 1997 deadline.

or rehabilitative programs, and he cannot access the gym and yard as he did before he was confined in segregation. In addition, he is allowed to use the prison yard for only one hour, five times per week; otherwise, he is confined to his cell.

The Eighth Amendment prohibits any punishment which violates the civilized standards of humanity and decency, or involves the unnecessary and wanton infliction of pain. *See Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To prove an Eighth Amendment violation, an inmate must show that he has been deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation[,]" or "other conditions intolerable for prison confinement." *Id.* at 348. Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege that he was denied basic human needs and requirements. Prison employment, contact with other inmates, religious services, and vocational, recreational, and/or rehabilitative programming are not such requirements. Moreover, Plaintiff has not alleged a significant deprivation as a result of his limited access to the prison yard. The Eighth Amendment entitles prisoners to sufficient exercise to maintain reasonably good physical and mental health. *See Walker v. Mintzes*, 771 F.2d 920-27 (6th Cir. 1985). Limitations on outdoor exercise may violate the Eighth Amendment in some circumstances, but the

Sixth Circuit has not set a minimum amount of outdoor recreation time that is required. *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995). Instead, it has held that "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification,'" impinges on an inmate's Eighth Amendment right, because "'[i]nmates require regular exercise to maintain reasonably good physical and psychological health.'" *Id.* (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Plaintiff does not claim he has been denied all opportunity for recreation or other physical activity sufficient to maintain reasonably good health. To the contrary, he claims that he is permitted to exercise in the prison yard for one hour a day, five days a week. Such conditions do not violate the Eighth Amendment. *See Coleman v. Granholm*, No. 06-12485, 2008 WL 919642, at *3 (E.D. Mich. Apr. 2, 2008) (no Eighth Amendment violation where prisoners in administrative segregation are allowed to exercise outside their cell for one hour a day, five days a week), *aff'd*, 413 F. App'x 866, 875 (6th Cir. 2011) ("Plaintiffs do not deny that, in administrative segregation, they get out-of-cell exercise, though they do not like the time of day it is offered."); *see also Rodgers*, 43 F.3d at 1087 (holding that prison officials were entitled to qualified immunity for denying the plaintiff out-of-cell exercise for at least one hour per day, five days a week, in a thirty day period). Absent allegations that Plaintiff's basic human needs were not met, the denial of privileges as a result of confinement in administrative segregation does not give rise to an Eighth Amendment claim. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *Evans v. Vinson*, No. 09-6283, 2011 WL 2579779, at *5 (6th Cir. June 29, 2011).

### D.  First Amendment (exercise of religion)

Plaintiff asserts, without further elaboration, that his confinement in segregation prevents him from attending religious services. While "lawful incarceration brings about the

necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must allege that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's conduct infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials"). Plaintiff alleges no facts regarding his religious beliefs or his religious practices to make out a plausible claim that his inability to attend unspecified religious services impinges on his First Amendment rights. Nor does he allege that he ever notified a Defendant, or any other prison official, of his desire to attend such a service and they refused to accommodate his request. In short, the complaint does not present "enough facts" to state a First Amendment claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. Therefore, Plaintiff fails to state a religious-exercise claim.

### E. Equal Protection

Plaintiff also contends that his confinement in segregation violated his right to equal protection, and that he was "singled out" with respect to the confiscation of his funds. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of

- 15 -

equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's claim is wholly conclusory. He does not identify any similarly-situated inmates who were treated differently from him, or allege any facts to support his implied assertion that Defendants intentionally discriminated against him. Thus, he fails to state an equal protection claim.

### F. Fourth Amendment

Plaintiff also claims that his confinement in segregation violates his right under the Fourth Amendment not to be "detained" without probable cause. That claim is without merit because Plaintiff was and is detained in prison as a result of his criminal conviction. A transfer from one area of the prison to a more restrictive one is not an additional detention requiring probable cause. *Cf. Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998)

("[Plaintiff's] claim that his classification to administrative segregation was an unlawful detention in violation of the Fourth Amendment is frivolous because prisoners have no reasonable expectation of privacy in their cells."). Thus, Plaintiff's Fourth Amendment claim is without merit.

## G. Due Process

Plaintiff asserts that Defendants violated his right to due process with respect to the confiscation of funds from his account and his confinement in segregation. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process. This due process gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

### 1. Confiscation of funds

With respect to the confiscation of Plaintiff's funds, the Supreme Court has repeatedly held that "some kind of hearing is required at some time before a State finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (quoting *Armstrong v. Manzo*, 380 U.S. 545,

552 (1965)); *see also Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972) (holding that procedural due process requires notice and an opportunity to be heard before the government deprives an individual of his possessions).

Plaintiff acknowledges that he received notice and a hearing before his funds were confiscated, and he acknowledges that he was able to challenge the hearing decision through the grievance process. He does not explicitly identify any shortcomings in those proceedings. He asserts that the hearing was "not conducted fairly," but he does not elaborate on that assertion. Thus, his due-process claim is unsupported. *See Iqbal*, 556 U.S. at 678 (noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim).

The core of Plaintiff's claim is not that the process he received was inadequate, but that officials acted contrary to, or beyond their authority under, prison policy. According to Plaintiff, prison policies authorized prison officials to reject funds sent to him by an outside party, but they did not authorize the removal of funds from his account one year after they were processed and credited to him. Even if Plaintiff's arguments are correct, however, he received an opportunity to raise them at a hearing, and in grievances that he filed thereafter. Plaintiff's disagreement with Defendants' interpretation and application of prison policy does not necessarily mean that those proceedings were constitutionally deficient.

Furthermore, Plaintiff's allegations indicate that his claim is subject to the rule in *Parratt*, 451 U.S. 527, *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.

If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Where *Parratt* applies, the plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). A prisoner's failure to sustain this burden requires dismissal of his action. *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985).

In a similar case involving the withdrawal of funds from a prisoner's account, the Sixth Circuit noted that prison policy did not give the defendants the authority to retain the plaintiff's money after it was withdrawn; thus, *Parratt* applied because the defendants' "unauthorized departures from prison policy directives were beyond the State's reasonable control." *Copeland*, 57 F.3d at 479. Similarly, Plaintiff claims that prison policy did not give Defendants the authority to remove money from his prison account. Assuming that his interpretation of prison policy is correct, then their conduct was "unauthorized" and *Parratt* applies to his claim.

If *Parratt* applies, then Plaintiff fails to state a claim for an additional reason because he does not allege that post-deprivation remedies are inadequate to remedy his loss. Indeed, in *Copeland*, the Sixth Circuit found that Michigan law provides "several adequate post-deprivation remedies" for the unauthorized removal of funds from a prisoner account. *Id.* at 480 (describing several such remedies).

The Court also notes that Defendants' alleged failure to abide by prison policy does not itself give rise to a constitutional claim. *See Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir.

2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). For the foregoing reasons, therefore, Plaintiff does not state a claim with respect to the removal of funds from his prison account.

### 2. Segregation

Plaintiff also alleges that Defendants deprived him of due process by transferring him to segregation without an adequate opportunity to respond to allegations that he was involved in the assault on Blythewood, and without meaningful review of his ongoing confinement in segregation for sixteen months. Generally, an individual's conviction at trial and subsequent incarceration represents a valid deprivation of liberty in compliance with due process and other constitutional guarantees. *Harden–Bey v. Rutter*, 524 F.3d 789, 791-92 (6th Cir. 2008). What little liberty interest an inmate retains is generally limited to "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *abrogated on other grounds by Sandin*, 515 U.S. at 484. Thus, in *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not implicate a liberty interest. 515 U.S. at 486. However, such confinement may implicate a liberty interest if it "imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison

life.'" *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin*, 515 U.S. at 483). To determine whether a liberty interest is at stake, the hardship must be weighed in light of the nature of the more-restrictive confinement and its duration. *Harden–Bey*, 524 F.3d at 794.

Consistent with the Supreme Court's pronouncements in *Sandin* and *Hewitt*, the Sixth Circuit has held that mere placement in administrative segregation, or placement for a relatively short period of time, does not require the protections of due process. *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in various circumstances, that confinement in administrative segregation for a relatively long period of time does not present an "atypical and significant" hardship "in relation to the ordinary incidents of prison life." *See, e.g., Jones*, 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Instead, segregation is considered atypical and significant only in "extreme circumstances." *Joseph*, 410 F. App'x at 868; *see, e.g., Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years in segregation implicates a liberty interest).

Where a liberty interest is shown, the due-process claim "is not complete unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 126. The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of

- 21 -

such inmates [in administrative segregation]." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983), *abrogated on other grounds by Sandin*, 515 U.S. at 484. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris*, 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485.

Plaintiff's only allegation against Hearings Officer Jacobsen is that he made the initial decision to transfer Plaintiff to administrative segregation in August 2011. Plaintiff's confinement was then subject to regular review by the security classification committee, starting in October 2011. Jacobsen's initial placement decision did not implicate Plaintiff's right to due process. In accordance with *Sandin*, *Rimmer-Bey*, and *Joseph*, the decision to place Plaintiff in segregation, subject to review by the security classification committee in two months' time, did not implicate a liberty interest subject to due process. Likewise, to the extent that Plaintiff sues ADW Beckwith because she initially recommended that Plaintiff be placed in segregation, he does not state a due-process claim against her. Consequently, Plaintiff fails to state a due-process claim against Defendants Beckwith and Jacobsen.

In contrast, Plaintiff alleges that Defendants Ball, McCarey, Sanders, and Thomas recommended that Plaintiff continue to be confined in segregation for much longer than two months. Warden Curtin apparently approved those recommendations. In addition, Defendant Schiebner's

memorandum suggests that he may have been involved in a decision to continue Plaintiff's segregation in January 2012. At this stage of the case, the Court determines that Plaintiff's allegations are sufficient to warrant service of his due-process claim on Defendants Ball, Curtin, McCarey, Sanders, Schiebner, and Thomas. However, because Plaintiff fails to state a due-process claim, or any other type of claim, against the other Defendants, they will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Barber, Beckwith, Bradley, Heyns, Howes, Jacobsen, and Little will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will allow service of the complaint against Defendants Ball, Curtin, McCarey, Sanders, Schiebner, and Thomas.

An Order consistent with this Opinion will be entered.


Dated: <u>April 19, 2013</u>         <u>/s/ Janet T. Neff</u>
                               Janet T. Neff
                               United States District Judge