UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEXTER HOLLINS,

                Plaintiff,                                            Hon. Janet T. Neff

v.                                                   Case No. 1:13-cv-00008

CINDI CURTIN, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #69).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **dismissed**.


## BACKGROUND

Plaintiff Dexter Earl Hollins is presently incarcerated by the Michigan Department of Corrections (MDOC) at Saginaw Correctional Facility.  The events about which he complains occurred while he was incarcerated at the Oaks Correctional Facility (ECF) and the Lakeland Correctional Facility (LCF).  In his amended complaint, Plaintiff sues MDOC Director Daniel Heyns, Legislative Corrections Ombudsman Keith Barber, and Regional Prison Administrator (RPA) (unknown) Curely.  Plaintiff sues the following LCF officials: Warden Carol Howes, Assistant Deputy Warden (ADW) Linda Beckwith, Assistant Resident Unit Supervisor (ARUS) J. Bradley, and Hearings Officer (unknown) Jacobsen.  Plaintiff also sues the following ECF officials:  Warden Cindi Curtin, Deputy Warden Timothy Ball,

Resident Unit Managers (RUMs) Robert Sanders and Jason Thomas, ARUS Robert McCarey, Inspector (unknown) Schiebner; Librarian C. Little, Deputy Warden (unknown) Sharp, RUM G. Miniard, and ARUS (unknown) Bengelink.

Plaintiff's amended complaint asserts claims with respect to three issues: (1) his confinement in administrative segregation; (2) the confiscation of certain funds from his prison account; and (3) an appeal in a federal habeas corpus proceeding that was not timely filed on his behalf by the prison legal writer program at ECF. The following allegations are contained in Plaintiff's amended complaint and the attachments and exhibits thereto.

### 1.    Segregation

On August 19, 2011, while Plaintiff was located at LCF, he was in the prison recreation area when another prisoner assaulted his friend, inmate Blythewood. Plaintiff allegedly left the scene soon after the assault began. Blythewood was taken to a hospital, where he died of his injuries. No prison guards witnessed the assault, and because it occurred in an unmonitored area, it was not recorded on the prison's security cameras. However, prison cameras recorded Plaintiff entering the recreation area with Blythewood before the assault, and then leaving the recreation area shortly thereafter. There were no statements or other evidence directly implicating Plaintiff in the assault, but because he was seen entering the recreation area with Blythewood before it occurred, prison officials suspected that Plaintiff might have been involved. That same day, he was taken to a segregation holding cell pending further investigation. A prison official prepared a misconduct report charging him with attempted murder and accusing him of luring Blythewood into the prison yard so that he could be assaulted.

Seven days later, on August 26, 2011, Warden Howes "pulled" the misconduct report due to lack of evidence. She replaced it with a notice of intent (NOI) prepared by ADW Beckwith to classify Plaintiff to administrative segregation, based on the asserted reason that the Michigan State Police (MSP) was investigating possible "felonious behavior" by Plaintiff. Plaintiff received a hearing regarding the NOI on August 29, 2011. The hearing officer, Defendant Jacobsen, refused to review any evidence related to the assault. Jacobsen told Plaintiff that the sole purpose for the hearing was to confirm that the MSP was investigating him for his involvement in the assault on Blythewood. After the hearing, Jacobsen concluded that segregation was warranted because a letter from the state police indicated that Plaintiff "is involved with an investigation by the police for a felony complaint." Plaintiff sought a rehearing, but the hearings administrator denied his request.

On September 1, 2011, Plaintiff was transferred to ECF and placed in administrative segregation. Plaintiff filed a grievance on September 19, 2011, complaining about the hearing conducted by Jacobsen. ARUS McCarey denied the grievance. Warden Curtin and Director Heyns upheld the grievance response at steps II and III of the grievance appeal process.

On September 22, 2011, Sergeant Jim Karbon of the MSP interviewed Plaintiff about the incident involving Blythewood. Deputy Warden Ball was present for the interview. Plaintiff explained that he was not involved in the assault and that he left the prison yard when Blythewood was attacked. Karbon stated that he believed Plaintiff's story, and he told Ball that he considered Plaintiff to be a witness to the assault rather than a suspect. Karbon indicated that he knew who committed the assault, and named another inmate. Karbon asked Plaintiff to sign a statement saying that he saw that particular inmate commit the assault. Plaintiff asked whether Karbon could have one of the other inmates who were present in the recreation area sign the statement, but Karbon responded that Plaintiff was the only

witness because the other inmates claimed that they could not see who assaulted Blythewood.  Karbon told Plaintiff that if he did not sign the statement, he would face murder charges.  Plaintiff asked for an attorney, but Karbon told him that an attorney was not necessary because Plaintiff was not a suspect.  Plaintiff refused to sign the statement, and Karbon and Ball became angry with him.  Ball sent Plaintiff back to segregation, telling Plaintiff to notify Ball when he was ready to make a statement.

Plaintiff then filed a grievance complaining that he was being held in segregation without cause.  Sometime thereafter, prison officials at ECF reissued the misconduct report for the assault.  On October 14, 2011, a MDOC hearings officer found Plaintiff not guilty of the assault, noting Sergeant Karbon's statement that Plaintiff was merely considered a witness to the assault in question.  Plaintiff remained in segregation, however.

The security classification committee at ECF met with Plaintiff on a regular basis to review his confinement in administrative segregation.  After each review hearing, the committee determined to keep Plaintiff in confinement because he was still under investigation by the police.  At one such hearing, Defendant Thomas allegedly told Plaintiff that he would be in segregation "forever."  At another hearing, Plaintiff explained to the committee that Sergeant Karbon had told Plaintiff and Defendant Ball that Plaintiff was not a suspect in the MSP investigation.  In response, Ball denied being present at the interview with Karbon.  On December 1, 2011, Plaintiff received a memorandum from Defendant Ball stating that he was still under investigation by the MSP, and that he would remain in segregation until the issue was resolved.

On December 6, 2011, Plaintiff filed another grievance complaining about his confinement in segregation.  Deputy Warden Sharp rejected the grievance, stating that Plaintiff was in segregation because of a misconduct conviction for possession of dangerous contraband.  However,

Plaintiff received a separate punishment for that misconduct: seven days in "toplock" and fourteen days of loss of privileges. Thus, this misconduct was not the basis for his confinement in administrative segregation. Plaintiff appealed that grievance to step II of the grievance appeal process, but Warden Curtin denied the appeal. Defendant Heyns subsequently denied Plaintiff's appeal at step III of the grievance appeal process.

On January 13, 2012, Plaintiff received a memorandum from Inspector Schiebner stating that he had contacted Sergeant Karbon, who confirmed that the police investigation was still pending. Schiebner informed Plaintiff that he would remain in segregation until the close of the police investigation. Plaintiff subsequently wrote a complaint about his confinement in segregation to Ombudsman Barber. On July 26, 2012, he received a response from Barber's office, stating, "Based on confirmation of ECF staff . . . your placement in segregation is appropriate and not in violation of policy." On September 18, 2012, Plaintiff met with RPA Curely, who stated that he was "only here to see if [Plaintiff] was all right." Curely indicated that Plaintiff "look[ed] all right to him" and "that was all he needed." Curely then "continued" Plaintiff's confinement in segregation.

Under MDOC policy, Warden Curtin was supposed to personally interview Plaintiff after his first six months of segregation, but she failed to do so. Plaintiff filed a grievance about the issue, and Curtin falsified a segregation review form to show that she had personally interviewed Plaintiff in front of his cell on September 19, 2012. ARUS McCarey denied Plaintiff's grievance at step I of the grievance process, Warden Curtin denied it at step II, and Director Heyns upheld the grievance response at step III.

As of July 2013, when Plaintiff filed his amended complaint, he had been confined in administrative segregation for almost two years. He asserts that the security classification committee's

reviews of his confinement are merely "paper shuffling," and that the committee's stated reason for keeping him in segregation (an ongoing police investigation) is merely a pretext to keep him there indefinitely.

Plaintiff's transfer to, and ongoing confinement in, administrative segregation has impacted him in several ways. When he was moved into segregation, prison officials took his personal property and placed it in storage. That property included over $80.00 worth of "food items" that are now inedible. In addition, Plaintiff lost his prison job and he has not been allowed to work, depriving him of the opportunity to earn money.

Also, Plaintiff is not able to attend group religious services. Plaintiff is a practicing Muslim. When he sent a request to Warden Curtin to attend Nation of Islam religious services, Curtin forwarded the request to Chaplain Duby who denied the request, stating that, "per policy, religious programming shall not be provided [to Plaintiff] in a group setting," for as long as he is in segregation.

Based on the foregoing facts, Plaintiff claims that Defendants have violated the following constitutional rights: (1) the right to practice his religion (First Amendment); (2) the right to due process (Fifth and Fourteenth Amendments); (3) the right to a speedy trial (Sixth Amendment); (4) the right to avoid excessive force and cruel and unusual punishment (Eighth Amendment); and (5) the right not to be held in segregation without probable cause (Fourth Amendment).

Plaintiff also claims that Defendants have treated him differently from other inmates, without justification, thereby violating his right to equal protection. The other inmates who were in the recreation area when Blythewood was assaulted were merely questioned about the assault, but Plaintiff allegedly was singled out because he is "openly gay" and prison officials assumed that he must have "lured" Blythewood into the recreation area. Also, though other prisoners in segregation can be released

back to the general population after 30 to 60 days if their behavior warrants such, Defendants will not

release Plaintiff based on his good behavior, despite the fact that he has not been found guilty of a

misconduct while in segregation.


### 2. Confiscation of funds

Plaintiff alleges that prison officials "arbitrarily" placed an "illegal debt" of $525.00 on

his prison account, and then withdrew funds to satisfy that debt. After prison officials moved Plaintiff

into segregation, they allegedly searched his personal property in an attempt to find a connection between

Plaintiff and the assault. They discovered receipts showing that Blythewood's brother sent money to

Plaintiff several times over the course of a year, from September 2010 to August 2011.

On August 26, 2011, Plaintiff received a NOI to remove $525.00 from his prison account

because his receipt of funds from Blythewood's brother violated MDOC policy. MDOC Policy

Directive 04.02.125 provides that funds from a family member of another prisoner may not be credited

to a prisoner's account, unless the funds are received to purchase hobby-craft items or the sender is a

family member of the recipient. Blythewood's brother is not a member of Plaintiff's family (and

Plaintiff does not claim that the funds were received to purchase hobby-craft items). Plaintiff contested

the NOI at a hearing, claiming that he was not aware of the policy, and that prison officials were required

to inform him of any reason for rejecting his funds when it received them, not after they placed them in

his account. Thus, according to Plaintiff, MDOC policy did not permit prison officials to remove the

funds from his account.

Defendant Bradley, the hearing officer, upheld the NOI and determined that the funds

should be removed. Plaintiff filed a grievance challenging Bradley's decision, and Defendants

Beckwith, Howes, and Heyns each upheld Bradley's decision at different stages of the grievance process. Plaintiff also submitted a complaint to Ombudsman Barber, who determined that the grievance responses appeared to be reasonable and not in violation of policy. Thus far, the MDOC has taken $351.04 from Plaintiff's prison account. Plaintiff claims that the removal of those funds violated his right to due process and equal protection. He also alleges that state-court relief is not available to him to recover those funds because more than a year has passed since they were confiscated.

### 3. Habeas corpus appeal

On August 30, 2011, Plaintiff learned that the Court of Appeals for the Sixth Circuit denied his appeal from the dismissal of a federal habeas corpus action. He then requested assistance from the prison legal writer program to appeal the Sixth Circuit's decision to the United States Supreme Court. Plaintiff's request was granted, but the individuals working on his case incorrectly calculated the appeal deadline as November 30, 2011 (the correct deadline was November 28), and then failed to file the appeal by November 30. As a result, the Supreme Court denied Plaintiff's petition as untimely.

Plaintiff alleges that the prison librarian, Defendant Little, was responsible for supervising the prison legal writer program at the time. She met with Plaintiff several weeks before the filing deadline and assured him that his petition was being prepared and that it would be filed before the deadline. Plaintiff asserts that she neglected to properly train and supervise the prison legal writers. After his appeal was dismissed, he filed a grievance about the issue. Defendant Sanders denied the grievance at step I of the grievance process, and Defendants Curtin and Heyns denied it at steps II and III, respectively. Plaintiff also complained to Ombudsman Barber, but Barber failed to respond to

Plaintiff's complaint.  Plaintiff contends that Defendants deprived him of due process and his right of

access to the courts.

   After screening Plaintiff's amended complaint, the Honorable Janet T. Neff concluded

as follows:

> After review of the amended complaint, the Court concludes that it states
> a due process claim against those Defendants who were involved in
> review and/or approval of his extended confinement in segregation
> (Defendants Ball, Bengelink, Curely, Curtin, McCarey, Miniard, Sanders,
> Schiebner, Sharp, and Thomas).  It also states a First Amendment claim
> against Defendant Heyns regarding Plaintiff's inability to attend group
> religious services.  Thus, the Court will allow those two claims to
> proceed, and will order service of the amended complaint on Defendants
> Bengelink, Curely, Heyns, Miniard, and Sharp, because they have not
> been served.
>
> However, the allegations in Plaintiff's amended complaint do not alter the
> disposition of any of Plaintiff's other claims.  Plaintiff's amended
> complaint does not state a claim under the Fourth, Fifth, Sixth, or Eighth
> Amendments.  Nor does it state an equal protection claim, an access-to-
> the-courts claim, or a municipal-liability claim.  In addition, it does not
> state a claim insofar as it challenges Plaintiff's initial placement in
> segregation or the confiscation of his funds.  Thus, with the exception of
> Defendant Heyns, it does not state a claim against the Defendants who
> have already been dismissed from the action (Defendants Barber,
> Beckwith, Bradley, Howes, Jacobsen, and Little).

(Dkt. #47).

   Defendants Ball, Bengelink, Curely, Curtin, McCarey, Miniard, Sanders, Schiebner,

Sharp, Thomas, and Heyns now move for summary judgment.


**LEGAL STANDARD**

   Summary judgment "shall" be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party

"must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**ANALYSIS**

I.         **Exhaustion**

Defendants Ball, Bengelink, Curely, Heyns, McCarey, Miniard, Sanders, Sharp, and

Thomas move for dismissal of Plaintiff's remaining claims against them on the ground that Plaintiff has

failed to properly exhaust his administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison

conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter*

*v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their

complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative

remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of

establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that

"the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's

deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*,

the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is
> required by the PLRA to 'properly exhaust.'  The level of detail necessary
> in a grievance to comply with the grievance procedures will vary from
> system to system and claim to claim, but it is the prison's requirements,
> and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable

grievance procedures for prisoners in MDOC custody.  Prior to submitting a grievance, a prisoner is

required to "attempt to resolve the issue with the staff member involved within two business days after

becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the

-12-

issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration."
Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P.   If this attempt is unsuccessful (or such is
inapplicable), the prisoner may submit a Step I grievance.  *Id.*   The grievance policy provides the
following directions for completing grievance forms: "The issues should be stated briefly but concisely.
Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what,
when, where, why, how).   Dates, times, places, and names of all those involved in the issue being
grieved are to be included."  *Id.* at ¶ R.   The prisoner must submit the grievance to a designated
grievance coordinator, who assigns it to a respondent.  *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely
response, he may appeal to Step II within ten business days of the response, or if no response was
received, within ten business days after the response was due.  *Id.* at ¶ BB.  If the prisoner is dissatisfied
with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step
III.  *Id.* at ¶ FF.   The Step III grievance must be submitted within ten business days after receiving the
Step II response, or if no Step II response was received, within ten business days after the date the Step
II response was due.  *Id.*

A.     Free Exercise Claim

Plaintiff claims that while in segregation he was denied the right to attend religious
services based on a policy prohibiting group services for inmates confined in segregation.   The Court
has interpreted these allegations as asserting a First Amendment claim against MDOC Director Daniel
Heyns, the individual presumably responsible for approving the offending policy.

In support of his motion for summary judgment, Defendant Heyns has presented evidence that Plaintiff has failed to pursue through all three steps of the prison grievance process any grievance that identified Heyns or "that raised any issue concerning administrative segregation prisoners not being able to attend group religious services." (Dkt. #70, Exhibit 1). Plaintiff has presented no evidence to the contrary. Accordingly, the undersigned recommends that Plaintiff's claim against Defendant Heyns be dismissed for failure to exhaust administrative remedies.

B.      Procedural Due Process

Plaintiff claims that his extended confinement in administrative segregation was accomplished by denial of his procedural due process rights. The Court has interpreted these allegations as stating a procedural due process claim against Defendants Ball, Bengelink, Curely, Curtin, McCarey, Miniard, Sanders, Schiebner, Sharp, and Thomas. Defendants Ball, Bengelink, Curely, McCarey, Miniard, Sanders, Sharp, and Thomas move for relief on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

At his deposition, Plaintiff conceded that he had only filed two grievances regarding his continued placement in segregation: (1) Grievance ECF-2011-09-2777-22b (filed September 19, 2011) and (2) Grievance ECF-2011-12-3726-27b (filed December 6, 2011). (Dkt. #1, Exhibit 1; Dkt. #38, Exhibit 1 at 24-34). Defendants concede that Plaintiff pursued both of these grievances through all three steps of the grievance process. The latter of these two grievances was asserted against Defendants Curtin and Schiebner only and, therefore, serves only to exhaust Plaintiff's claims against these two defendants.

The earlier of these two grievances was not asserted against any particular individual, but instead constituted a generalized grievance about his initial placement in segregation. As previously

noted, MDOC policy provides that a prisoner grievance must include the "names of all those involved in the issue being grieved." This grievance was not denied, however, because of Plaintiff's failure to comply with this requirement. Instead, the grievance was denied on the merits. As the Sixth Circuit has made clear, if prison officials decline to enforce their own procedural rules regarding the proper filing of prison grievances, and instead address a grievance on the merits, prison officials cannot later seek to enforce, in a judicial proceeding, the procedural rule in question. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325-26 (6th Cir. 2010). Thus, Defendants cannot satisfy their burden to demonstrate that this grievance does not exhaust his claims against them.

Accordingly, for the reasons articulated herein, the undersigned recommends that Plaintiff's First Amendment Free Exercise claim against Defendant Heyns be dismissed for failure to exhaust administrative remedies. The undersigned further recommends that Defendants' motion to dismiss Plaintiff's procedural due process on exhaustion grounds be denied.

**II.          Procedural Due Process**

Plaintiff asserts that his extended confinement in administrative segregation was accomplished by denial of his procedural due process rights. Defendants assert that they are entitled to summary judgment because the circumstance in question did not impose on Plaintiff atypical and significant hardship in relation to the ordinary incidents of prison life. The Court agrees.

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of a constitutionally protected liberty interest the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007); *Harris*

*v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). The first step in assessing whether Plaintiff

suffered a violation of his procedural due process rights is to determine whether he was deprived of a

constitutionally protected liberty interest. A constitutionally protected liberty interest exists only in

circumstances in which an individual is subjected to "freedom from restraint which, while not exceeding

the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *see also, Bazzetta*

*v. McGinnis*, 430 F.3d 795, 798 (6th Cir. 2005).

        The evidence reveals that Plaintiff was placed in administrative segregation because the

Michigan State Police began an investigation into the killing of Blythewood and Plaintiff's involvement

in such. (Dkt. #1 at Page ID#26-30). Prison officials regularly conducted reviews of Plaintiff's

placement in administrative segregation. (Dkt. #38, Exhibit 5). Plaintiff was maintained in segregation

based on the ongoing investigation into Plaintiff's involvement in Blythewood's murder. (Dkt. #38,

Exhibit 5). Prison officials regularly communicated with the Michigan State Police to assess the status

of the investigation. (Dkt. #38, Exhibit 4). The investigation concluded in September 2013. (Dkt. #70,

Exhibit 2). In light of the fact that Plaintiff was already serving several 25-50 years sentences, the

prosecuting attorney decided not to prosecute Plaintiff for his involvement in Blythewood's killing.

(Dkt. #70, Exhibit 2). Prison officials were subsequently informed of this decision at which point

Plaintiff was immediately released from segregation. (Dkt. #70, Exhibit 3).

        Placement in segregation imposes atypical and significant hardship only in "extreme

circumstances." *Joseph v. Curtin*, 410 Fed. Appx. 865, 868 (6th Cir., Nov. 24, 2010). In this respect,

the Sixth Circuit has held that placing an inmate in segregation for approximately two and one-half years

while an investigation is undertaken to determine his involvement in serious criminal activity does not

violate due process. *See Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998). As the *Jones* court

stated:

> It is not "atypical" for a prisoner to be in segregation while his or her
> participation in violent conduct inside the prison walls is investigated.
> While the length of time that plaintiff has been in segregation may be
> atypical, it was justified and does not lead to the conclusion that plaintiff
> suffered an "atypical and significant" hardship in relation to the ordinary
> incidents of prison life. When a prisoner is implicated in the killing of a
> prison guard during a large prison riot, it is not unreasonable for
> corrections officials to make some adjustment in the conditions of his or
> her imprisonment until a full and thorough investigation is completed.

*Id.*

Because Plaintiff's placement in segregation for slightly more than two years did not,

under the circumstances, constitute an atypical and significant hardship, Plaintiff did not suffer a

deprivation of a constitutionally protected liberty interest. Moreover, even if Plaintiff's placement in

segregation did implicate a constitutionally protected liberty interest, the result is the same as Plaintiff

received adequate process justifying such. *See, e.g., Harris v. Caruso*, 465 Fed. Appx. 481, 484-85 (6th

Cir., Feb. 29, 2012) (due process is satisfied where prisoner maintained in segregation received

"meaningful, periodic reviews" of his segregation status). Because Plaintiff can satisfy neither prong

of the due process analysis regarding this particular claim, the undersigned recommends that Defendants

Ball, Bengelink, Curely, Curtin, McCarey, Miniard, Sanders, Schiebner, Sharp, and Thomas are entitled

to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #69), be **granted** and this action **dismissed**.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  February 24, 2015                          /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge